Robertson, Ch. J.
It is alleged in the complaint in this case, that while the first order of the court of common pleas remained unchanged, Hague, the predecessor of the plaintiff Genet, in pursuance of the direction contained in such order, paid A. T. Stewart and others, in June, 1857, the sum of $650; and that “said A. T. Stewart and others by their attorney, on or about” some (blank) “day of December, 1857, paid over to said defendant the whole of said sum of $650, to hold the same as such receiver; and that the defendant, pretending to have a right as such receiver to receive the same, did receive *665 the said money in said pretended capacity.” Part of such money, however, ($325) is alleged to have been paid to Stewart and others on the 4th of December, 1857, while such order appears to have been modified on appeal on the 3d of the same month, being the day previous. . It is not therefore very clear, from the complaint, whether Stewart received all of such moneys before or after such modification of the order, and consequently whether he paid them over to the defendant before that time.
It is not alleged in the complaint that Stewart and others delivered to the defendant the identical articles received by them as money, or that they paid him any sum of money as being that received by them. The terms “said sum of money," by themselves, cannot be construed as meaning the same coin or representatives of value. Indeed it could hardly be supposed that Stewart and others retained the money from June to December in the same form in which they received it. The plaintiffs, therefore, cannot recover in this action as in an action of trover, the identical money or representatives of value paid, whose form, or their property in it, had not been changed, at the time it was delivered to the defendant. Eor can they maintain it as one for money had and received by the latter expressly for their use, from Stewart and others, since there is no allegation that the latter paid it to him, or he received it for such purpose.
Stewart and others were liable to refund to the plaintiffs, the money they had received under the order as it was originally made, upon its modification on appeal, which destroyed their right to retain it. They could have been compelled to do so by action as well as by writ of restitution or seire facias. (Scott v. Swezey, 29 Barb. 87, and cases cited.) It is conceded that they could not recover back from the defendant directly, the money paid by them to him. On that point the cases cited by the plaintiffs’ counsel are good authority. (Goodall v. Lowndes, 6 Ad & El. 464. Goodman v. Sayer, 2 J. & W. 263. Sprague v. Birdsall, 2 Cowen, 419.) It is supposed, however, that indirectly hy means of this action, the de *666 fendant may be made to pay back the money to the plaintiffs substantially in discharge of the liability of Stewart, &c. to theta.
All the cases which authorize the pursuit by the owner of property or its proceeds improperly disposed of by persons to whom it has been entrusted require some trust violated, or authority exceeded, or else a fraud committed out of which a trust may be created in equity, to warrant it. Story (2 Eq. Jur. § 1258,) lays down the rale in these words : “ Whenever the property of any party has been wrongfully misapplied or a trust fund wrongfully converted into another species of property, if its identity can be traced, it will be, held, in its new form, liable to the rights of the original owner or cestui que trust.” In a note the case of “property rightfully sold by an agent or trustee, provided the proceeds can be distinguished,” (Id. n. 3,) is added. The author bases his view upon a general proposition to the effect, that no mere change of the original state or forms in which property is subject to a trust, can shake off such trust, or give an agent or trustee who thus changes it, or any one who stands in his place, (excluding, of course, purchasers in good faith,) any interest in it free from such trust. These principles make two ingredients indispensable to such right of pursuit in equity of property and its proceeds into a new form, into which it may be wrongfully converted; first, there must have been a violation of a trust, express or implied, or abuse of authority; and secondly, the precise property or its proceeds must be kept separate from other property of the same kind, so as to be readily distinguishable. (Taylor v. Plumer, 3 M. & Sel. 574-576. Hanford v. Lloyd, 20 Beav. 310.) Judge Story admits the determination of the right “when the subject matter is turned into money, and mixed and confounded in a general mass of property of the same description.” (2 Eq. Jur, § 1259.) In this case there was no trust or authority created. The plaintiffs’ predecessor was ordered by a .court having jurisdiction to pay certain moneys to Stewart, &c. and he did so ; afterwards,' by a modification of such order, on appeal, he became entitled *667 to reclaim not the same, hut an equal amount of money generally. No relation of principal and agent, or trustee and cestui que trust arose between the plaintiffs and the parties receiving sueh money. It lost its identity, like any other sum paid by accident or mistake, and there was no duty in regard to it on the part of the recipients; they could dispose of it as they thought proper, leaving only a liability to refund it, in case of a reversal of the order. In like manner the sum received by the defendant, although equal in amount, was not the same property as that previously delivered to the latter by the predecessor of the plaintiffs—it was in the same form; but its identity as the property so delivered, or its proceeds, was lost and was not traceable. It was a voluntary payment incapable of being recovered back by Stewart and others by action; although possibly the court, as an officer of whom under color of his office, as charged in the complaint, the defendant received it, might compel him, if not entitled to hold it as receiver, to refund it. The equitable doctrine of the right of a person entitled,. to follow property to which he is entitled as well as its proceeds into any new shape, into which it has been wrongfully changed by a party entrusted with it, will not, therefore, help the plaintiffs.
The pleadings indeed present the bald case of money paid to one as his property who subsequently becomes bound to refund it, after he has voluntarily paid a like sum to a third party either as an individual or as an officer of court; without impressing on such last payment any specific character or condition. In'such case no privity could be created by any act of the party who received and paid such sum between the parties from and to whom he so received and paid it; and the separate liabilities of each to the other, therefore, remain as before.
The complaint, moreover, alleges that the sum in question was paid to and received by the defendant as receiver. Under such circumustances he was not bound to investigate the liability of the party paying it, to pay it. Having so received it un *668 qualifiedly in his official character, he could only part with it, according to the order of the court, as an officer of which he received it; otherwise he would be responsible to' the parties entitled to it. If paid to him. under a mistake, the court of which he was an officer could alone order it to be refunded, when it might be used to reimburse the plaintiffs. Such a mode of proceeding is entirely distinct from a liability by the defendants directly to- the plaintiffs; because the two sums paid corresponded in amount. The power of a court to compel the return of money paid to one of its officers in his official capacity under a mistake, is, entirely different from a common law liability of such officer to répay it to the party so paying it, created by the act of such court in modifying an order under which it has paid to the party who paid it to such officer. Without preserving the identity of the sums paid, or fixing some duty on the party first receiving it, or the defendant, there was no common law liability. It is undoubtedly true that an action for money had and received would always lie against one who had the money which ex cequo et bono belonged to another, in his possession; but where such money was not, at law, the property of such other, or was held under some implied trust for him, some privity or relation must exist between the parties, creating an obligation to jray it over. The judgment creditor in this case had a right originally to receive the sum in question, and did so receive it; he paid it over to the defendant in his official capacity absolutely; the latter by simply so receiving it did not hold it as belonging to the plaintiffs, or as bound, forthwith, to pay it to them. The modification of the order, on appeal, although it fastened a liability on Stewart and others, did not create one on the part of the defendant.
Whether, therefore, the defendant received such sum indi- • vidually or as receiver, he is not liable to the plaintiffs in this action. This renders it unnecessary to discuss the question, whether they could sue for such sum without an assignment by their predecessor of their right of action. I do not see *669 clearly any mode in which the complaint could he amended so as to hold the defendant; hut still the plaintiffs may be allowed to attempt it if they can, on the usual terms; otherwise judgment must be' given for the defendant.