# WHEELING.

## KYLES *v.* KYLE *et al.*

Submitted June 28, 1884.—Decided December 13, 1884.

1. An *ex parte* settlement of an administration account was made in 1860, and recorded in the county court, showing a considerable balance against the administrator, all of which was subsequently paid off, provided the administrator should be allowed a credit for $500.00 which he paid before said settlement was made, and which is not referred to or credited therein; this credit was disputed by the distributees, and in 1877 they brought their suit against the administrator for the sum found against him in said settlement, and he in his answer claims credit for this $500.00 and establishes by direct and positive proof, that it was a proper charge against the estate and that he paid it, and that he did not discover, until three or four years before the suit was brought, that it had not been credited in said settlement. HELD:

   I. That the administrator was entitled to credit for said $500.00 in the settlement of his accounts ordered by the court in said suit. (p. 377.)

   II. The administrator was a competent witness to prove that he had paid said claim, its existence having been proved by other testimony. (p. 379.)

The opinion of the Court contains a sufficient statement of the facts in the case.

*G. A. Blakemore* for appellant.

*W. F. Dyer* for appellees.

SNYDER, JUDGE:

Abraham Kyle of Pendleton county died testate in the year 1854, leaving a widow and three children, George W., Abel L. and John W. Kyle, the two latter being then about three and five years of age respectively. By the will the widow was appointed executrix, but she having declined to act, the son, George W. Kyle, qualified as administrator with the will annexed on March 9, 1854. A settlement of his administration account was made in August, 1860, by commissioner Moomau, which was, on October 4, 1860, received by the county court of Pendleton county and ordered to be recorded. The said report showed the

administrator to be indebted to the estate $1,772.52, a large part of which was subsequently paid off by the administrator.

In September, 1877, the two sons, Abel L. and John W. Kyle, brought this suit against their brother George W. and the sureties on his administration bond and, on November 7, 1881, the court entered a decree for the plaintiffs against the defendant for an aggregate sum of over $750.00 and the costs of the suit, and from this decree the defendant, George W. Kyle, appealed.

The only controversy on this appeal is whether or not the court erred in refusing to allow the appellant credit for $500.00, which he claims he paid to William Seymour. The appellant alleges in his answer and proves by his own deposition, that his father and testator was a son of George W. Kyle, deceased, who prior to his father's death died the owner of a large real and considerable personal estate; that his father just before his death had employed William Seymour of Hardy county, as his counsel to contest and set aside a paper purporting to be the will of the said George Kyle deceased, and for his services he agreed to pay said Seymour $250.00 as a fee certain and $500.00 if said alleged will should be set aside ; that the suit for that purpose was pending when his father died, and that he as administrator renewed the agreement with Seymour upon the same terms ; that said suit was successful, but at the time it was decided he had no assets in his hands and he gave Seymour his note for the $500.00; that no assets came to his hands until the year 1857, and soon thereafter and shortly before Seymour died he paid the whole of the said note except about $24.00 to Garrett Cunningham by whom Seymour sent the note to him for collection, and a short time afterwards he paid the balance of the note to Solomon Cunningham who had it for collection. He thinks he took a receipt from Garret Cunningham for what he paid him but he is not positive. He has made diligent search for the receipt without finding it, and he thinks if he had one he filed it before commissioner Moomau who made the settlement of his accounts in 1860, and he never knew that the money thus paid to Seymour had not been credited to him in the said settlement until 1874 or 1875 when he examined said settlement and found it had not

been credited. That he had frequently applied to the plaintiffs for a settlement but they refused to allow him said credit and in consequence no settlement could be made.

Soloman Cunningham testifies that some eighteen or twenty years before 1878, (the date his deposition was given,) William Seymour gave him a small note on the appellant to collect for him, the amount, as near as he could recollect, was $24.00 and some cents. The note stated on its face that it was for a balance of fee in the Kyle will case and was signed, he thinks, by the appellant as administrator for Abraham Kyle.

Jacob Hammer testifies, that Abraham Kyle in his lifetime told him that he (Kyle) was to pay William Seymour $500.00 provided the will was set aside in the Kyle will case.

Neither of the plaintiffs testified in reference to this claim or produced any testimony on the subject, but in their replication to the appellant's answer to their bill they say, that it may be true that their father employed Seymour as counsel in said Kyle will case, but that they knew nothing about the contract or fee. They admit that a considerable sum of money came into the hands of appellant as administrator in the fall of 1857, but they deny that he paid Seymour $500.00 though, they say, he may have paid a small remnant of said sum to Solomon Cunningham for Seymour; and they deny that he should have credit for said $500.00 as administrator.

The cause was referred to a commissioner and he made a report in which he allowed the appellant credit as administrator for said $500.00 and interest thereon from January 1, 1858. The plaintiffs excepted to this credit and the court sustained the exception as to the whole of it except $24.00 which was allowed.

The only thing that could militate against the claim of the appellant is the presumption which arises from his failure or neglect to have himself credited with said $500.000 in his settlement made before commissioner Moomau in 1860; for, all the proof shows that the payment was made before that settlement. But as that settlement is simply *primae facie* evidence and shows on its face that this credit was not allowed it seems to me the presumption in favor of its correctness is

fully met and overcome by the positive evidence in the cause. This is so plain to my mind that it would be difficult to account for the action of the court below except on the ground that that court held the testimony of the appellant incompetent. That the court so held is stated by counsel for the appellees and he contends here that said ruling was. correct and should be sustained. If said testimony is incompetent, then I agree that the decree of the circuit court should be affirmed, but if competent, the evidence in the cause plainly proves that the appellant is entitled to credit for said $500.00, and the decree must be reversed.

In support of the position, that the testimony of the appellant is incompetent, the counsel for the appellees relies on the sixth clause or exception in section 23 of chapter 130 of the Code, which reads as follows :

"A guardian, committee or other fiduciary shall not be examined as a witness against his ward, or other person he represents, as to any transaction in his fiduciary capacity, unless the ward or person affected thereby is in a condition to testify as to the same transaction."

The said twenty-third section has been amended and the clause above quoted left out of it.—Section 23 chapter 160 Acts 1882 p. 544.

This amendment, however, was made since this cause was decided by the circuit court. What effect that change in the statute might have on the cause in this Court it is unnecessary to decide.—*Parker* v. *Clarkson*, 4 W. Va. 407. For conceding that the question must be determined by the statute as it was before the amendment, there cannot, it seems to me, be any doubt as to the competency of this testimony. The appellant was not the guardian of the appellees and he stood in no other fiduciary relation to them than as administrator of an estate of which they were distributees. The sixth clause above quoted has no reference to such relation, because that is specially provided for in the second clause of the same section of the statute. The latter provides that, "A party shall not be examined in his own behalf in respect to any transaction or communication *had personally* with a deceased person ·against" the representatives of such person, &c.

The testimony here objected to had no reference to any such personal transaction or communication with the decedent, and, consequently, it was manifestly competent under the statute. *Carlton* v. *Mays*, 8 W. Va. 245.

It appears from the first statement of commissioner Anderson, filed in this cause, that by allowing said credit, the appellant has overpaid the plaintiffs the amount due them as distributees of said estate. He makes no claim of any overpayment in his answer, and, if he had done so, he could not recover the same under the laws of this State, he having taken no refunding bond. *Davis* v. *Newman*, 2 Rob. 664; *Anderson* v. *Peircy*, 20 W. Va. 282.

The decree of the circuit court must, therefore, be reversed, and the plaintiff's bill dismissed with costs to the appellant in both courts against the plaintiffs in the court below.

REVERSED.