LAURA BAIRD POLEN *et al. v.* R. ELLEN BAIRD *et al.*

(No. 9450)

Submitted April 6, 1943. Decided May 18, 1943.

*Edmund Lee Jones* and *McCamic & Clark,* for appellants.

*Charles J. Shuck,* for appellees.

KENNA, JUDGE:

This chancery proceeding was brought in the Circuit Court of Ohio County by Laura Baird Polen and four others, the children and heirs at law of William C. Baird, against R. Ellen Baird and Josiah W. Baird and wife, a half-sister and half-brother of John Baird, for the purpose of construing the will of John Baird who died in 1901, leaving personal property consisting mainly of farm equipment and in addition thereto his home consisting of a tract of 115 acres, located on what is locally known as "Boggs Hill Road", and the buildings located thereon. The land disposed of by John Baird's will was part of a tract of 240 acres of which his father, Josiah Baird, had been seized and possessed at the time of his death intestate, a number of years before that of John Baird.

The other tract of 125 acres had been acquired by William C. Baird in the same manner that John Baird had come to own all of the tract of 115 acres, that is to say, by conveyances of the undivided interests of the other heirs at law by Josiah Baird.

The bill of complaint alleges that R. Ellen Baird and Josiah W. Baird and his wife were in possession of a tract of 115 acres, claiming title thereto as devisees under the will of John Baird, who at the time of his death was survived by his full sisters, Mary Allison and Jane Baird and by a half-sister and two half-brothers, R. Ellen Baird, Josiah W. Baird and William C. Baird, Mary Allison having died without issue and intestate, and William C. Baird having left the plaintiffs as his children and heirs at law.

The will in question is filed as an exhibit with the bill of complaint, the first paragraph of which contains the usual formal recitals, the second paragraph beginning as follows: ."To my sister, Jane, I give and bequeath all that part of my farm lying south of the division line" (followed by a local description dividing 115 acres into a northern and southern boundary).

The third and fourth paragraphs of the will read as follows:

> "I also give her one half of my personal property whatever it may be on the condition that she pay to my sister Mary Allison Twenty five dollars and to my Brother Jonah W. Baird Fifty Dollars, My Sister R. Ella Baird is to give to Mary Allison and Jonah W. Baird the same amount respectively, Twenty five and 5 Fifty dollars and this shall be their shares respectively.
>
> "I give this property to my sister to have and to hold *furing* her life time and she may designate by her will who may *recieve* her share of the Estate providing only that she give it to my heirs that are nearest of kin."

Skipping the fifth paragraph the sixth reads,

> " * * * I would recommend to my sisters Jane and Ella that they remember and give to

Wm. C. Bairds children as my heirs whatever they would take care of and would be useful to them and cause them to hold me in grateful remembrance".

R. Ellen Baird and Josiah W. Baird filed their joint answer, and R. Ellen Baird filed a cross bill praying for the construction of the will of John Baird as it affected their interests and her power of appointment, if any, in so far as the northern part of the 115 acre tract was concerned.

Jane Baird died in 1938, intestate and without issue.

In his opinions, which are made a part of the record by the trial chancellor, it is not regarded as necessary to consider the sixth paragraph of the testator's will beyond the effect it has in throwing light on the meaning of the phrase "my heirs that are nearest of kin" as used in the fourth paragraph. In this we think that he is plainly right, as the language of the sixth paragraph, we feel, is not sufficiently mandatory to create, under the rule generally recognized in this country, a directory trust, often referred to as precatory, it being plainly advisory. I Scott on Trust 152 et seq.; 1 Bogert on Trusts and Trustees 233 et seq.; Notes, 49 A. L. R. 10, 70 A. L. R. 326, 107 A. L. R. 896. However, disregarding the sixth paragraph of the will as a means of disposing of property, does not mean that that paragraph, as a help in construction, is to be ignored. To the contrary, the will is to be read as a whole, so that in arriving at the intention of the testator all of the language is to be weighed and considered, and the meaning attached to its use is to be determined by giving effect as far as possible, to its clauses as being interrelated and not as standing alone with a segregated meaning. *Kello* v. *Kello,* 127 Va. 368, 103 S. E. 633, 11 A. L. R. 322; *Sweeney* v. *Security Trust Co.,* 116 W. Va. 344, 180 S. E. 897; *Davis* v. *Davis,* 118 W. Va. 328, 190 S. E. 331; *Harris* v. *Eskridge,* 124 W. Va. 283, 20 S. E. (2d) 465. The position of the appellants, as we understand it, is that the trial chancellor erred to their prejudice in regarding paragraph six as governing the

construction of paragraph two and thereby giving undue weight to a·merely advisory precatory clause. The appellants speak of that method of interpretation as placing the precatory clause in "a position of dominance" in the will's construction. They reason that paragraph four contained a clearly defined power of appointment limiting the class of donees to the testator's heirs who are nearest of kin, thus, under the circumstances existing at the time of Jane's death, eliminating the children of a half-brother and confining the class to R. Ellen Baird and Josiah W. Baird, a half-sister and half-brother of the testator, and that to permit the language of paragraph six to enlarge the class of donees is to ·cut down a previously erected interest, claiming further that the word "give" as used in the admittedly precatory clause is confined to personal property, meaning heirlooms and the like.

We believe that the trial chancellor's conclusion to view and consider every word appearing in the will before reaching a decision as to the interests thereby created was thoroughly sound, and we do not believe that that method results in destroying the "valid disposition of real estate by will" by permitting such a precatory provision to cast light upon the meaning of a preceding paragraph. Under the better rule, there has been no valid disposition until the entire instrument has been taken into account, and, therefore, there is nothing to tear down in considering the effect of even the last word or punctuation mark. Unless expressly precluded by the language of the will, the instrument is considered as a whole before any part thereof is given effect in any manner or to any extent.

As a matter of fact, we believe that one of the primary rules of construction applicable to testamentary instruments is, regardless of the property dealt with or of its material importance gauged in dollars, that where there exists inconsistency or contradiction between the different provisions of a will, the last appearing or written in, is controlling as representing the last expression

of the testator's intention, to arrive at which is the primary purpose of all rules of interpretation and construction. *Wise* v. *Hinegardner,* 97 W. Va. 587, 596, 125 S. E. 579, 582. A universally recognized, analogous principle is that the last testamentary paper shall be given effect as against those that preceded it in point of time, thus making the last known purpose of the testator the controlling element no matter to what extent it operates to cancel previous valid dispositions.

We believe that the fourth paragraph of John Baird's will, in addition to clearly vesting in Jane Baird a life estate in that part of the 115 acres devised to her, operates also to confer upon her the power of appointment thereby limited to the heirs of the testator, and further limited to those of his heirs who at the death of the donee of the power of appointment happened to be the testator's nearest of kin. *Daniel* v. *Brown,* 156 Va. 563, 159 S. E. 209, 75 A. L. R. 1377; *American Brass Co.* v. *Hanser,* 284 Mich. 194, 278 N. W. 816, 115 A. L. R. 1464, and note; 1 Scott on Trusts 174; 3 Pomeroy's Equity Jur. (Fifth Ed.) 988; 1 Perry on Trusts and Trustees (Seventh Ed.) 458. We believe that this paragraph read alone would operate to form a class at the time of the donee's death, in this instance, of only two persons, from which the donee of the power could choose persons who would take per capita and that would give her a power of selection not including the children of the persons who died before the class was formed. This, as we understand it, is the construction for which the appellants contend. However, we believe that this interpretation or construction can be arrived at only by entirely disregarding the sixth paragraph of the will which recommends to his sisters "that they remember and give to Wm. C. Bairds children as my heirs whatever they would take care of and would be useful to them". This paragraph, we believe, has the effect of including in the class from which the donee of the power of appointment is to choose, the children of William C. Baird. We do not agree with the contention of appellants that the use of the

word "give" indicates the intention of limiting the precatory provision to personal property such as bric-a-brac, trinkets, and whatnot, for the reason that the testator in disposing of his land uses words of transfer also technically restricted to personal property, saying that "To my sister Jane I give and bequeath all that part of my farm * * * ". At no place in the will does he use words of transfer exactly applicable to real estate. In addition, the power of appointment conferred upon Jane Baird is apparently applicable to both realty and personalty, so that in order to receive either from her at her death, the children of William C. Baird would necessarily be included in the class from which she might choose and to whom she is limited in the disposition of personality as well as realty.

We therefore believe that the decree of the Circuit Court of Ohio County has not been shown to be erroneous and should therefore be affirmed.

There is another, and what we consider possibly sound, reasoning which does not conform to that followed by the trial chancellor but which leads to the same result, and that is to regard John Baird as having disposed of the remainder following the life estate devised to Jane Baird, only upon the exercise of the power of appointment, and since that power was not exercised there were no takers of the remainder so that the devise is limited to the life estate and as to the remaining interest in the fee the testator died intestate. We believe, however, that this suggested interpretation conflicts with the decided majority of cases dealing with the power of appointment which hold in effect that the class to whom the appointment is restricted is to be formed by applying the provisions of the will at the time of the donee's death, and that in the event the donee sees fit not to exercise the power of appointment to any member, or any number of members, of the class, the entire class takes, the rule being predicated upon the time-honored maxim that where the purpose of disposition is shown by the execu-

tion of a testamentary paper, equity abhors intestacy, and therefore prefers an implied disposal.

It was assigned as error that the trial chancellor dismissed the cross bill of R. Ellen Baird which sought the advice of the trial chancellor concerning the powers which were vested in her under the will of John Baird, the same provisions applying to her interest as those that applied to the interest of Jane Baird so that a decree based upon her cross bill would involve practically the same matters of construction and the same legal questions as those that were applicable to the interest of Jane Baird, excepting, of course, that the latter had failed to exercise the power, while R. Ellen Baird is still clothed with that right. This cross bill prayed for an interpretation and construction of the will of John Baird expressly based upon a doubt. Conceding that it was taken for confessed, it is rather difficult to see how, in a proceeding of this nature, when, as here, the prayer of the bill places no construction upon the instrument under consideration, a final decree can be based upon a bill of complaint taken for confessed. The principal purpose of the proceeding is to get the assistance of a court of chancery in the interpretation and construction of a testamentary paper, the uncertain meaning of which would otherwise lead to avoidable confusion. It is rather difficult to comprehend how the cross bill alleging uncertainty of meaning as a ground for seeking judicial advice could form the basis of a decree when taken for confessed, thus binding the court. However, conceding that a bill of this nature may be taken for confessed, we still do not see how the failure to deal with it *eo nomine* in the final decree can result in prejudice to the defendant, R. Ellen Baird. If the questions raised in her cross bill are dealt with in the final decree, it naturally follows that they are answered thereby, and if they are not dealt with we do not believe that the general rule in chancery causes which extends the decision of a final decree to include the entire matter in controversy whether dealt with in terms or not, is applicable to a proceeding in-

volving the judicial construction of an instrument so that it necessarily covers the entire paper. We do not believe that the provision of Code, 41-3-7, have been disregarded in dismissing the cross bill for the simple reason that any right of R. Ellen Baird that may be said to be adjudged in the final decree, necessarily rests upon the construction and interpretation of John Baird's will, and that is exactly what her cross bill sought. If they have not been so adjudged, she is not thereby deprived of her day in court, because if her interests require a further construction she is at liberty, if so advised, to seek and receive additional advice. The final decree might so state.

The decree of the Circuit Court of Ohio County is therefore affirmed, with the right reserved to R. Ellen Baird to procure such additional construction of the will of John Baird as she is advised her interests require.

*Affirmed.*